UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| TERRY KECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-455 |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Terry Keck requests review of the Commissioner of Social Security's decision to deny his application for disability insurance benefits ("DIB").[1] For the reasons given below, the Court finds that the Commissioner's decision must be VACATED and REMANDED for further proceedings.

**II. BACKGROUND**

Keck has a high-school education and was forty-six years old when he applied for benefits. (Tr. 15.) He was employed as a construction worker until November 1998, when he fell off a roof and seriously injured his hip. (Tr. 15, 207.)

Keck claims to suffer from many conditions, but only four directly bear on this appeal: intractable pain in the hip and back, obesity, sleep apnea,[2] and edema in the legs and feet ("pedal

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

[2] Sleep apnea is marked by "[e]pisodes of cessation of breathing, lasting ten seconds or longer, during sleep." *The American Medical Association Encyclopedia of Medicine* 916 (1989). These episodes cause "excessive sleepiness during the day" and "[d]ifficulty with concentration and memory," sometimes severe enough to "disrupt[] work and social life." *Id.*

edema").³

The opinions of two doctors, Dr. Shashank Kashyap (a cardiologist) and Dr. Michael Mellinger (an orthopedist), are primarily at issue. Dr. Kashyap, who treated Keck over roughly two years (2000-2002), diagnosed him with sleep apnea and pedal edema, among other things. (Tr. 246.) Over the course of Dr. Kashyap's treatment, Keck's sleep apnea improved markedly; after some initial adjustments, the use of a "BiPap" or "C-Pap" device relieved Keck's condition to the point where Dr. Kashyap wrote (in early 2001) that he was "doing well." (Tr. 240-42.) Similarly, Keck's edema responded well to treatment; Dr. Kashyap's last clinical notes (in early 2002) indicated that Keck's "leg cramps are better, there is no swelling in his legs," and his general physical condition was "unremarkable." (Tr. 294-97.)

In August 2002, at the request of Keck's attorney, Dr. Kashyap completed a questionnaire about Keck's limitations. (Tr. 311-15.) Dr. Kashyap stated on the form that Keck suffered from, *inter alia*, sleep apnea and pedal edema. (Tr. 311.) Despite the above-noted improvement in these conditions, Dr. Kashyap opined that Keck's prognosis was "poor" and that, if employed, he would likely miss more than four days of work per month due to his conditions. (Tr. 313, 315.)

Dr. Mellinger, who treated Keck for several years, also completed a questionnaire at the request of Keck's attorney. (Tr. 286-92.) Dr. Mellinger stated that he had diagnosed Keck with "intractable pain" in his right hip, obesity, and "venous insufficiency" in his right leg. (Tr. 286.) He also opined that Keck met at least one of the Social Security Administration's definitions of disability (known as "listings"), specifically Listing 1.03. (Tr. 288.) Finally, much like Dr.

---

³Edema is excessive swelling caused by "abnormal accumulation of serum-like fluid in the body tissues." *Id.* at 390.

Kashyap, Dr. Mellinger said that Keck would likely miss more than three days of work per month due to his conditions.  (Tr. 291.)

Keck originally filed his claim for DIB on October 19, 2000, claiming that he was disabled as of November 17, 1998 (the day of his roof accident and consequent hip injury).  (Tr. 89-91.)  A hearing was conducted on July 9, 2002, before Administrative Law Judge ("ALJ") Richard VerWiebe, at which both Keck and his friend Monty Dafhorn testified.  (Tr. 29-62.)  On September 25, 2002, the ALJ entered an opinion denying Keck's claim.  (Tr. 11-23.)  Keck's request for review before the Appeals Council was denied (Tr. 5-7), making the ALJ's opinion the final decision of the Commissioner and precipitating this appeal.

### III. STANDARD OF REVIEW

Section 405(g) of the Social Security Act ("the Act") grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).

The ALJ's decision must be sustained if it is supported by substantial evidence.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Id.*

Under this standard, the Court reviews the entire administrative record, but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's.  *Id.*  Nonetheless, "substantial evidence" review should not be a simple

3

rubber-stamp of the Commissioner's decision.  *Id.*

## IV. DISCUSSION

*A. Legal Framework and the ALJ's Decision*

Under the Act, a plaintiff is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether Keck is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues, in sequence: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4]  *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *Social Security Practice Guide* § 13.01[2] (Matthew Bender 2003).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).  A negative answer at any point other than step

---

[4]Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC"), or what tasks the claimant can do despite his limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 404.1520(e).

4

three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant on every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

In this case, the ALJ found in Keck's favor at steps one and two. (Tr. 15-16.) Specifically, at step two he determined that Keck's hip pain and obesity are severe impairments, but that his sleep apnea and pedal edema are not. (Tr. 16.) The ALJ then found, at step three, that Keck did not meet a listing. (*Id.*)

The ALJ found the following RFC for Keck: "he needs to alternate sitting and standing, and requires the use of a cane." (Tr. 18.) Based on this RFC, the ALJ ruled for Keck on step 4 but against him on step 5; in the ALJ's view, although Keck can no longer perform construction work, he is capable of performing "a significant range of sedentary work," in jobs such as "electronics assistant, optical assistant, addressor, and food checker." (Tr. 18-19.) The ALJ supported these findings with testimony from a vocational expert ("VE"). (Tr. 19.)

Keck now attacks the ALJ's ruling on three grounds. He argues that the ALJ erred by (1) disregarding Dr. Mellinger's opinion that Keck meets Listing 1.03; (2) questioning Keck's credibility on the witness stand; and (3) discounting Dr. Kashyap's and Dr. Mellinger's opinions on how often Keck's conditions would cause him to miss work. The Court will address these arguments in turn.

### B. The ALJ Ignored Crucial Evidence at Step Three

At step three, the ALJ is required to determine whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner. *See* 20 C.F.R. § 404, Subpt. P, App. 1. Here, the ALJ's analysis was quite succinct:

5

> [Keck's impairments are] not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  There is no objective evidence that meets the requirements of a Listing.  *No physician, of record, has stated that the claimant's impairments meet or equal any Listing in the Listing of Impairments.*

(Tr. 16 (emphasis added).)  And with that, the ALJ moved on to consider Keck's RFC and steps four and five.  (Tr. 16-17.)

There is no delicate way to put this: the ALJ's reasoning is dead wrong.  Contrary to the ALJ's assertion, a physician of record, Dr. Mellinger, stated on a questionnaire that Keck meets Listing 1.03.  (Tr. 288-89.)  Clearly, the ALJ failed to even consider this important evidence.  It is well settled that decisions must be remanded where they "lack[] evidentiary support or [are] so poorly articulated as to prevent meaningful review"; this principle particularly applies where, as here, the ALJ "failed to discuss, or even cite" the relevant listing.  *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3rd Cir. 2000) ("Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand"); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (remanding where "ALJ did not discuss evidence . . . at step three, [but] merely stated a summary conclusion the appellant's impairments did not meet or equal" a listing).

The Commissioner goes to elaborate lengths to demonstrate that, despite the ALJ's misstatement of the record, Keck cannot possibly meet Listing 1.03.  For instance, the Commissioner argues that Keck's hip surgery does not qualify as the "[r]econstructive surgery or surgical arthrodesis" required to meet the listing, nor can he prove an "inability to ambulate effectively," which is also required.  *See* 20 C.F.R. § 404, Subpt. P, App. 1 § 1.03.  But that is all beside the point, because the ALJ did not rely on any of the evidence cited by the

6

Commissioner when completing his step-three analysis; instead, he merely ignored the evidence supporting Keck's claim and conclusorily ruled against him. He did not even *mention* Listing 1.03, much less marshal any evidence in support of a conclusion that Keck does not meet it. Thus, the Commissioner's attempts to paper over the ALJ's error are for naught, just as they were in *Steele*:

> The Commissioner insists that "the record as a whole" fills the gaps in the ALJ's analysis. . . . But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must "build an accurate and logical bridge from the evidence to her conclusion."

290 F.3d at 941 (internal citations omitted).

For these reasons, the ALJ's disregard of Dr. Mellinger's opinion at step three requires remand.

## C. The ALJ Improperly Evaluated Keck's Credibility

In his testimony at the hearing, Keck stated that he has to lie down two or three times a day and that he often must elevate his legs while sitting. The ALJ, however, rejected this testimony and thus refused to include these limitations in Keck's RFC. (Tr. 17-18.) He gave two reasons for his decision: (1) Keck's friend, Monty Darforn, "testified that when he visits the claimant he is sitting with his legs down"; and (2) the ALJ personally observed that Keck "sat throughout the approximately hour long hearing with his legs down, and in no apparent discomfort." (*Id.*) These reasons do not withstand scrutiny.

First, the ALJ's argument is based on a mischaracterization of Darforn's testimony. The relevant colloquy was as follows:

7

>[ALJ]: [When you visited Keck, was] he sitting like he is now, or does – how would he –
>
>[Darforn]: Pretty much, yes.
>
>[ALJ]: Now, he says he needs to elevate his feet a lot. When you'd visit him, did he do that?
>
>[Darforn]: Yeah. I've walked in, he's been laying down before, gone down.
>
>[ALJ]: Okay. Was that fairly frequent?
>
>[Darforn]: A few times, I've gone down there and caught him taking his nap.

(Tr. 53.) This testimony hardly supports the ALJ's assertion that "when [Darforn] visits the claimant he is sitting with his legs down." (Tr. 17.) Although Darforn at first stated that Keck sat "pretty much" the same way at home as he did at the hearing, he was responding to a vague question that did not specifically ask about leg position. And Darforn's responses to the ALJ's next two questions suggest that Keck *did* need to lay down or elevate his legs, at least "a few times." Thus, the ALJ's use of Darforn's testimony to discredit Keck was improper.

With Darforn's testimony cast aside, the only remaining reason for the ALJ's credibility ruling is his personal observation that Keck did not need to lay down or elevate his legs for the duration of the hearing. But while an ALJ is allowed to consider such observations when weighing a claimant's credibility, they cannot be the sole basis for a credibility determination. Soc. Sec. Ruling 96-7p ("In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements."). Accordingly, the ALJ's rejection of Keck's testimony regarding laying down and elevating his feet was not supported by substantial

8

evidence.[5]

### D. The ALJ Improperly Discounted Dr. Mellinger's Opinion at Step Five

As noted previously, both Dr. Kashyap and Dr. Mellinger opined that Keck's conditions would cause him to miss substantial amounts of work. Specifically, Dr. Kashyap stated that Keck's sleep apnea and pedal edema, *inter alia*, would cause him to miss more than four days per month, and Dr. Mellinger stated that Keck's hip pain and obesity, *inter alia*, would cause him to miss more than three days per month. At the hearing, the VE testified that an individual who misses that much work is incapable of performing work in the national economy:

> [Keck's attorney]: Okay. Let's assume a person the same age, education, and work experience as Mr. Keck. And this individual would miss work more than three days a month. Would this work – individual be able to perform any unskilled work in the economy?
>
> [VE]: No.
>
> [Keck's attorney]: Judge, those last two questions were from Dr. Mellinger's report. I don't have the exhibit number on that right now.
>
> ALJ: Dr. Mellinger?
>
> [Keck's attorney]: The physical residual functional capacity questionnaire.
>
> ALJ: Okay.

---

[5]Again, the Commissioner tries to rehabilitate the ALJ's error by citing a raft of evidence that the ALJ did not even cite, much less rely on. This is insufficient to avoid remand. *Steele*, 290 F.3d at 941.

It also bears mentioning that the ALJ, in the same paragraph as his credibility determination, made an oblique reference to the fact that Keck has attempted to find employment since the onset date of his alleged disability. (Tr. 18.) The ALJ did not explain how this is relevant to whether Keck's testimony about his limitations is credible, nor does the Court see how it could be. Moreover, the Seventh Circuit has recognized, albeit in a slightly different context, that a disabled person's willingness to endure pain can lead to incorrect assumptions about his ability to work. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) ("Hawkins' unfortunate choice in life is between succumbing to his pain and fatigue and becoming inert, on the one hand, and on the other hand pushing himself to engage in a certain amount of painful and fatiguing activity. If he does the latter, it does not prove that he is not disabled.").

(Tr. 60.)

Nonetheless, the ALJ found at step five that Keck is capable of performing work in the national economy.  While he referenced Dr. Kashyap's opinion on Keck's absenteeism, he never directly rejected it (Tr. 16); moreover, he did not even mention Dr. Mellinger's opinion on absenteeism (*see* Tr. 17), nor the VE's opinion that such absenteeism precludes gainful employment (*see* Tr. 19).  Accordingly, Keck now argues that the ALJ's step-five determination was in error.

While it is true that the ALJ did not expressly confront Dr. Kashyap's absenteeism opinion, the ALJ adequately explained his rejection of it, albeit indirectly.  Dr. Kashyap's prediction as to Keck's absenteeism was largely based on his diagnosis of Keck's sleep apnea and pedal edema.  (Tr. 311, 315.)  But the ALJ, at step two of his analysis, persuasively explained that he did not consider those two conditions to be "severe impairments" in Keck's case.  (Tr. 16.)  He noted, *inter alia*, that (1) Keck had shown no swelling in his legs recently; (2) Dr. Kashyap had examined his legs and found them "unremarkable"; and (3) "there were no complaints of any problems associated with sleep apnea since [Keck] began [treatment]."  (*Id.*)  Given these recent improvements in Keck's sleep apnea and pedal edema, the ALJ understandably ruled that "[t]here is no objective evidence to support significant limitations due to" these conditions.  (*Id.*)  And because Dr. Kashyap's absenteeism prediction was based largely on these particular conditions, it can be readily inferred that the ALJ rejected the prediction for that reason, even though he failed to say so explicitly.  Thus, the ALJ did not err by disregarding Dr. Kashyap's opinion at step five.

The same cannot be said, however, of Dr. Mellinger's opinion on Keck's absenteeism.

The ALJ did not even cite Dr. Mellinger's absenteeism opinion, much less explain why he was rejecting it – even though Keck's attorney specifically called his attention to it at the hearing. The Commissioner insists that this oversight was harmless because "Dr. Mellinger's opinion regarding absenteeism . . . was substantially the same as Dr. Kashyap's absenteeism opinion" (Mem. in Supp. of Commissioner's Decision at 17), but that assertion is incorrect. Unlike Dr. Kashyap, who based his prediction on impairments that the ALJ elsewhere found were not "severe" (sleep apnea and pedal edema), Dr. Mellinger based his prediction on impairments that the ALJ found to "significantly interfere with [Keck's] ability to perform work functions" – hip pain and obesity. (Tr. 16, 286, 291.) Thus, the ALJ's failure to discredit, or even cite, Dr. Mellinger's opinion on Keck's absenteeism, coupled with the VE's testimony that a person cannot be gainfully employed with that level of absenteeism, means that the ALJ's step-five determination was not supported by substantial evidence.

Although the ALJ is not required to "provide a written evaluation of every piece of evidence that is presented," he still must "minimally articulate . . . [his] justification for rejecting or accepting specific evidence of disability." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Here, the ALJ ignored "specific evidence of disability" at step five by failing to address Dr. Mellinger's absenteeism opinion, and thus remand is necessary.

## V. CONCLUSION

The ALJ's opinion was not supported by substantial evidence in three respects. First, the ALJ failed to consider Dr. Mellinger's opinion that Keck meets Listing 1.03. Second, the ALJ improperly rejected Keck's testimony that he must lay down two or three times a day and frequently must elevate his feet when sitting. Third, the ALJ failed to consider Dr. Mellinger's

11

opinion that Keck would have to miss more than three days of work per month, particularly in light of the VE's testimony that such absenteeism would render Keck incapable of work in the national economy.  For all of these reasons, the Commissioner's decision is VACATED and REMANDED for further proceedings not inconsistent with this opinion.

Enter for this 5th day of July, 2005.

                                       /S/ Roger B. Cosbey
                                       Roger B. Cosbey,
                                       United States Magistrate Judge